## BARNES et al. v. ALEXANDER et al.

This court will not reverse a judgment granting an order making the plain-tiffs in error, over their objection, parties defendant to a pending equita-ble petition, when the record of the case discloses the existence of com-plicated litigation, to which they are, at least, proper parties; nothing being now intimated as to what should or should not be adjudicated rela-tively to them or their rights at the final hearing.

Argued March 23, — Decided April 24, 1899.

Petition to make parties. Before Judge Kimsey. Hall superior court. May 2, 1898.

*Joseph B. & Bryan Cumming*, for plaintiffs in error.

*F. H. Miller, W. A. Charters, W. K. Miller, W. H. Barrett, Bowdre Phinizy, H. A. Alexander* and *H. H. Dean*, contra.

Cobb, J. Julius M. Alexander filed a petition addressed to the superior court of Hall county, in which he alleged that he

is the owner and holder of one of the first mortgage bonds of the Gainesville, Jefferson & Southern Railroad Company, which bond is for $1,000 and is one of a series of 290 bonds, the principal of 200 of which is for a like amount and that of the remaining ninety is for $500, the whole issue aggregating $245,-000. Each of these bonds is dated August 10, 1881, is made payable to W. A. Brown, Charles H. Phinizy, and George T. Barnes, as trustees, and matures July 1, 1911, with interest at 7 per cent. per annum, payable semi-annually either in the city of Augusta, Georgia, or in the city of New York. There is a stipulation on each bond that if default should be made in the payment of any installment of interest and continue for six months after demand for payment, the principal of the bond shall become due. On the day that the bonds bear date the railroad company executed and delivered to the trustees above named its deed of trust or mortgage, the same being a first mortgage upon all of its railroad and branch railroad, constructed or to be constructed, and upon all other property then owned or afterward to be acquired, with all of its rights, franchises, and privileges. In this mortgage it is provided that if the railroad company should fail or refuse to pay the interest coupons when due and payment has been lawfully demanded, and such default continues for six months after such demand, or should fail to pay the principal of any bond which has become due and payment of which has been demanded, the mortgagees are authorized, upon the application of the holder of one fifth of the bonds, either to take possession of the property described in the mortgage and operate it for the benefit of the holders of the bonds upon which default has been made, and to devote the net earnings of the property to the payment of the bonds and interest; or they are authorized, at their option, upon a like application, by giving sixty days notice to the mortgagor, to sell the property covered by the mortgage, at public sale, to the highest bidder, after due advertisement. Petitioner alleges that he received promptly the installments of interest on his bond up to January 1, 1896; that on that date he duly presented the interest coupon maturing at that time for payment at the agency of the company at Augusta, Georgia, and

that payment thereof was refused, and that such refusal has
continued for more than six months.    Payment of the interest
coupon due July 1, 1896, has also been demanded and refused.
The interest coupon due January 1, 1897, is past due and un-
paid, and petitioner charges that the railroad company has no
funds with which to pay the same.    Petitioner further alleges
that on October 1, 1883, the defendant company executed to
the trustees above named its second mortgage to secure an issue
of bonds of even date with the mortgage, which covers the same
property as is embraced in the first mortgage hereinbefore re-
ferred to.    It is alleged that the railroad company is insolvent
and owes a large floating debt aggregating several hundred
thousand dollars, that the mortgage estate has been wasted,
and that the trustees have failed and neglected to protect the
same.    On the 5th day of September, 1895, the stockholders
of the defendant company passed a resolution directing the sale
of its rolling-stock to the Georgia Railroad Company, and an
attempted conveyance was made thereof in November of that
year.    It is alleged that the mortgage estate is insufficient to
pay in full the bonds secured by the first mortgage, and that
the action of the trustees in suffering the sale to the Georgia
Railroad Company was in violation of their duty as such.    Pe-
titioner brings his petition not only as a bondholder but as a
creditor of the defendant company, and not only for himself
but in behalf of all the holders of bonds secured by the first
mortgage, as well as all other creditors of the defendant com-
pany, who may come in and be made parties.    Waiving dis-
covery, he prays that the first mortgage may be decreed to be
a valid and binding debt of the defendant company to the
amount of the principal and interest thereof, and that the
amount of principal and interest due on the bonds secured
thereby be ascertained and decreed; that the first mortgage be
decreed to be a first lien on all of the property of the defend-
ant company; that unless the defendant company shall pay
the amount found to be due on the bonds secured by the first
mortgage, the property embraced therein be decreed to be sold
and the proceeds thereof be applied pro rata to the payment
of the amounts so found; that a receiver be appointed to take

cnarge of the property described in the first mortgage; that an injunction be granted restraining the defendants from interfering with the receiver; for general relief; and for process against the defendant company and the trustees mentioned in the petition.

W. A. Brown, George T. Barnes and Charles H. Phinizy, the trustees named in the first mortgage referred to in the petition of Alexander, filed their petition against the Gainesville, Jefferson and Southern Railroad Company, alleging, in substance, as follows:   All of the first mortgage bonds issued by the defendant company have been sold and are now in the hands of bona fide purchasers for value.   Of these bonds the principal and interest of $163,500 have been guaranteed by the lessees of the Georgia Railroad Company, and $83,500 have no such guaranty.   The former are more valuable than the latter, which inequality in value was unknown to petitioners Brown and Barnes until the filing of the petition.   The interest on the guaranteed bonds has been paid, while the interest on the others has not been paid since July 1, 1895.   The owners of bonds not guaranteed have duly presented their coupons for interest due on January 1, 1896, July 1, 1896, and January 1, 1897, for payment, which was refused, the demand and refusal being in January, 1896, July, 1896, and January, 1897; the defendant company having no funds with which to pay the same.   The defendant company is in default and no longer entitled to the possession of the mortgaged property, as more than six months have elapsed since the demand and refusal to pay interest due January 1, 1896; and therefore the whole issue has become due, and the bondholders are entitled to have the mortgage foreclosed.   The defendant company is insolvent, and owes besides the mortgage debt a large floating debt.   The prayers of the petition were, that the mortgage be foreclosed, and be decreed to be a first lien on all of the property of the defendant company; that the Georgia Railroad Company be required to account for all the property received by it; that petitioners be appointed receivers to take charge of the property of the Gainesville, Jefferson and Southern Railroad Company; that an injunction be granted to restrain defendants from interfering with the receivers in the management of the property

in their hands; and that process issue against the Gainesville, Jefferson and Southern Railroad Company and the Georgia Railroad Company.

By an order of court these two cases were consolidated, and a receiver was appointed to take charge of the property of the Gainesville, Jefferson and Southern Railroad Company. The petitioners in the consolidated cases filed an amendment in which they alleged that in September, 1883, the Gainesville, Jefferson and Southern Railroad Company merged into itself the corporation known as the Walton Railroad Company, and acquired all of the railroad and other property rights and franchises of the Walton Railroad Company. The Walton railroad connects with the Gainesville, Jefferson and Southern Railroad at Monroe, and together with it forms a continuous line from Gainesville to Social Circle, and constitutes one indivisible and entire line of railroad, and can not be separated without irreparable damage to both lines, and the same must be dealt with and administered by the court as a single property. At the time of the merger of the two roads there existed upon the Walton railroad a mortgage bearing date October 1, 1881, covering all of the property of the Walton Railroad Company, the same being issued to secure a series of bonds aggregating forty thousand dollars principal, each bond being one thousand dollars in amount and maturing on July 1, 1910, with interest at six per cent. per annum, payable semi-annually. This mortgage was executed to George T. Barnes, George C. Selman and W. H. Barrett, as trustees. At the time of the consolidation of the two railroads the Gainesville, Jefferson and Southern Railroad Company assumed the payment of the principal and interest of these bonds, and the same is one of the debts of that railroad company. On July 1, 1897, the Gainesville, Jefferson and Southern Railroad Company failed and refused to pay the interest coupons then due on the bonds of the Walton Railroad Company, and the same has been due and unpaid for six months. On account of this default in payment of interest, the principal of the bonds has become due and collectible. To sell the properties of the two railroad companies separately would cause irreparable damage, and the sale

of the entire property together will increase the amount of assets to be derived therefrom. Of the trustees under the mortgage on the property of the Walton Railroad Company W. H. Barrett is dead, and the surviving trustees are George T. Barnes and George C. Selman. Waiving discovery, petitioners pray that the entire property of the Gainesville, Jefferson and Southern Railroad Company be sold free from all encumbrances, the properties covered by the three mortgages before referred to being sold in separate parcels, and that the proceeds be applied according to the several rights and priorities of claims against the same; that George T. Barnes and George C. Selman as trustees of the mortgage issued by the Walton Railroad Company be made parties, and that process issue against them; and for general relief. This amendment was allowed; and a rule nisi was granted, calling upon George T. Barnes and George C. Selman to show cause why they should not be made parties to the case. In answer to the rule they appeared and set up, as reasons why they should not be made parties, that they were informed that all, or nearly all, of the bonds secured by the mortgage issued by the Walton Railroad Company were owned by the Georgia Railroad and Banking Company; that respondents as trustees under this mortgage have no duties to perform except under certain circumstances set out therein, and then only upon the application of one fifth of the bondholders; that the Georgia Railroad and Banking Company has notified respondents that it does not wish the trustees to exercise the power given them in the mortgage; and respondents are informed that the Georgia Railroad and Banking Company will decline to meet the expenses of the trustees in any proceeding they may take except at its request. After hearing argument, the court passed an order making the respondents in the rule parties to the case, and to this they excepted.

The record discloses a complicated litigation. The bondholders who are represented by the trustees who were made parties are undoubtedly interested in the property in the hands of the court. We do not intend in the present case to decide what are the rights, if any exist, in favor of the other parties to the litigation against these trustees. Whether the property

on which the bondholders represented by them have a first lien can be sold free from incumbrances, and such bondholders be required to receive in discharge of the debt due them the money arising from such sale, when they do not desire to foreclose their mortgage or proceed against their debtor, is a question to be determined at the final hearing of the case. This question was not passed upon by the judge whose decision is under review, when he passed the order making these trustees parties, and can not, therefore, be passed upon by this court on the present writ of error. As these trustees are interested in the property in the hands of the court, in any view of the case they are proper parties to the litigation. It is essential to a proper decree of sale in the present case that the amount of all liens upon the property to be sold be fixed and determined. If the property formerly owned by the Walton Railroad Company is sold under the decree subject to the mortgage in favor of its bondholders, the purchasers who buy the property thus encumbered ought to know the exact amount of the encumbrance on the same. These trustees are therefore proper parties to this litigation for the purpose of having this amount fixed so that there can be no controversy after the sale as to the amount of their debt. For this purpose, if for no other, they should be brought in and be made parties. Whether any substantial relief in favor of the other parties to the litigation should be decreed against them, and whether in the event no such relief is so decreed they should be allowed their costs and expenses, are all matters to be determined at the final hearing, and will not now be discussed.

　　　　　*Judgment affirmed.　All the Justices concurring.*